## LEE COUNTY v. THE STATE, EX REL. PHILLIPS COUNTY.

LEE COUNTY: *Its liability to the counties from which formed.*

The statute creating Lee county imposed upon it, as a condition of its existence, a debt to each of the counties contributing territory to it, for a fair proportion of the existing debt of each, to be ascertained and fixed in the manner prescribed, and to become definite when so ascertained, and then to take effect by relation to the passage of the act; and if the county court should refuse to act and provide, within a reasonable time afterward, some reasonable mode for the discharge of the obligations in a reasonable time, it may be compelled, by mandamus, to do so. But demand for action, and refusal, must be shown in the petition, and the petition must be in behalf of all the counties interested, or must show that separate action may be had without prejudice to the others.

APPEAL from *Lee* Circuit Court.
Hon. J. N. CYPERT, Circuit Judge.

*U. M. Rose,* for Lee county:
Legislative power on the subject unlimited. 33 *Ark.,* 497, 516; 100 *U. S.,* 528.

No demand shown. 1 *Dutcher,* 331; 7 *Rich.,* 234; 17 *Min.,* 429; 25 *Ind.,* 422; 15 *Ga.,* 473; 8 *R. I.,* 192.

*Jacob Frieber, M. T. Sanders,* for appellee:
Relied upon: *Phillips Co. v. Lee Co.,* 34 *Ark.,* 240, of this court.

As to demand: 87 *Ill.,* 182; *High. on Extr. Legal Rem., sec.* 41; 65 *N. C.,* 403; 5 *Wall.,* 705; *Dillon on Mu. Cor., sec.* 689, *and notes;* 13 *Fla.,* 451; *Topping on Man.,* 287; 7 *Rich.,* 322.

### STATEMENT.

EAKIN, J. On the seventeenth of January, 1880, the county of Phillips, as relator, filed in the circuit court of

Lee county, a petition for a writ of mandamus, against the latter, setting forth the provisions of an act of the general assembly, to create the county of Lee, approved April 17, 1873, and showing:

That on the fifteenth of September, 1873, in pursuance of the act, the board of supervisors of the relator ascertained the exact amount of its indebtedness at the time of the passage of the act; and the proportion of it which would fall upon that part of its territory taken to make the county of Lee; which estimate and apportionment was duly transmitted to the clerk of the supervisors of Lee county. The amount so ascertained to be payable by Lee county, being $60,312.70.

That the said board of supervisors of Lee county found the said estimate and apportionment to be correct, but refused to recognize its liability upon more than the sum of $11,539.39, which it paid. That, upon appeal from this finding and decision, it was finally decided that the amount of the indebtedness of Phillips county, properly devolving upon Lee, under the act, was nearly as claimed; that is, upon railroad bonds, $48,752.33; floating debt, $11,539.39; and, it was further decided, that said railroad bonds were bearing 6 per cent. interest per annum, and were not yet due.

It is further shown in the petition that said contested debt is due from Phillips county in 1891, upon which it has paid interest since April 17, 1873, amounting up to April, 1880, to the sum of $84,000, of which Lee county should have paid the proportion of 23⅔ per cent., or $19,880. It charges that said county, although required by the act and authorized by the constitution, to levy a tax to pay said indebtedness, has refused to make any provision therefor.

The prayer is that the county court of Lee be required, annually, at the proper time, to levy a tax, not exceeding

five mills on the dollar, to repay said sum of $19,880, and the interest on 23⅔ per centage of the total of the railroad bonds (being $200,000 in all), and to provide for the payment of the same proportion of the principal at maturity, and for further relief.

A general demurrer, upon several grounds of an argumentative character, was overruled; and, defendant resting, a peremptory mandamus was ordered, and Lee county appealed.

### OPINION.

The facts which underlie this case, and a statement of the most important provisions of the act of 1873, creating Lee county, may be found in the case of *Phillips Co. v. Lee Co.*, *34 Ark.*, *240*, and need not be repeated.

The first objection made, is that the petition shows no demand upon Lee county to proceed in the discharge of its duty. This leads to the inquiry of what that duty was, for which we must look alone to the statute. The legislature, as was determined when the case of *Phillips County v. Lee County, supra,* was here before, had the power to leave the old counties burdened with the whole of their respective debts without any aid whatever from the new county of Lee. It did not choose to do so, however, but provided what it considered an equitable arrangement of the burden. Of this, Lee county on the other hand, can not complain. In short, neither county has contracted rights against the other, to prevent the free exercise of legislative will, and each must find its obligations and its relief in the act itself; save, that the rights of the old creditors against the old counties must remain intact and unimpaired. Being under the ægis of the federal constitution they can not be impaired.

Section 6 of the act, after prescribing the mode of ascer-

taining the proportion of the debt of each old county, to devolve upon Lee, being that followed by Phillips, provides : that if the copy of the records and proceedings, so ascertaining the debt and proportion, to be sent to the board of supervisors of Lee county, be found by said board to be correct, the same shall be entered of record by said board (now the county court) "and the same shall thenceforth become and be the debt of Lee county, to be paid by the inhabitants thereof and owners of property therein, in such manner and at such times as the said board of supervisors may determine."

It can not be considered as the intention of this act to create a debt *directly* from Lee county to the creditors of old counties by way of novation, exonerating the former debtors *pro tanto*. The debts remain valid in full against the original counties, and the creditors may look to them alone. The provision is wholly in relief of the old counties by way of compensation for their loss of resources. Hence the legislature was under no constitutional restrictions in determining the measure or terms of the relief, inasmuch as it was entirely within its option to afford any. The language of the statute, unembarrassed by constitutional provisions is to be construed according to its plain import, as matter of grace, springing from a sense of justice and fair dealing.

Thus construed it, at once, imposed upon the new county as a condition of its existence, a *debt* to each of the old counties contributing territory, for a fair proportion of the existing debt of each, to be ascertained and fixed in a manner prescribed, and to become definite when so ascertained, but then to take effect by relation. Then followed, upon this, an obligation to pay it, by resort to the usual method, which is by taxation. But in doing this the new county was not ordered to act promptly, to the full extent of her

LEE COUNTY:
Its liability to parent counties.

powers. That might be onerous and unjust, inasmuch as the debt from the old counties to their creditors might not be due, and even those due might be so large as to make an immediate tax for a full payment of the proportion, too onerous for the tax-payers, subjecting them to harsher measures than they would have incurred by remaining in the counties, which would have had a larger discretion in distributing the burden over several years. It was prudently provided therefore that the "*inhabitants*" and "*owners of property*" in the new county should pay these obligations "in such manner" and "at such times" as the board of supervisors might determine.

Upon the other hand, however, the intention is very clear to give substantial relief to the old counties, which would not be done by allowing to the new county an unlimited discretion as to the time and manner of discharging its obligations. This would be trifling and illusory. It should proceed to provide some reasonable mode for the discharge in a reasonable time, of the burden imposed, as a condition of its existence, upon its inhabitants and owners of property, and the courts have power to enforce the performance of the duty; judging, themselves, of the reasonable nature of the delay, or of the mode. If the new county should unreasonably refuse to act, it may be set in motion by mandamus; and if, in acting, it should fail to provide means of payment, and a time therefor, such as would appear reasonable, its action may be corrected by any proper supervisory proceeding.

Demand before suit essential. Such being the nature and bearing of the act, the question of the importance of a demand, before mandamus, becomes clearer. The general rule is admitted to be, that a demand is necessary. The exceptions sustained by some authorities are in cases where the law imposes a positive and well defined duty of a public nature, upon public

Lee County v. The State, ex rel. Phillips County.

officers, affecting public interests. Then the law stands for a continuous demand and it suffices to show a refusal. Otherwise, the general rule prevails. This is not such a case. The duty of Lee county to proceed at once, without unreasonable delay, to *some* provident action is clear enough, but what provision is to be made, and the time in which it should be made available may depend upon circumstances, especially upon the whole indebtedness of the new county to all the old ones. No one county has the right to exhaust the whole taxing power of Lee for its own reimbursement, to the exclusion of other counties, included upon equal terms, in the same statutory protection. There should have been a refusal to a demand, averred.

It may be remarked, in passing, that any application to set the court in motion, should be in behalf of all the old counties; or, if made by one, should show that separate action could be had with regard to its own claim, without injustice to others, if there be others still unsettled. Monroe, St. Francis and Crittenden counties, for all that appears in the petition, may have rights to be very injuriously affected by any positive relief, afforded Phillips by mandamus, and the statute gives the courts notice of these probable interests.

*Application should be made for all the old counties, or, etc.*

The petition and the judgment upon it, treat the debt as one existing at the time of the ratification of the constitution, for the payment of which a tax of five mills beyond the tax for general purposes, may be levied without violation of *section 9, Article XVI* of the constitution. This seems a correct view of the nature of the obligation. The debt was never in any sense contracted nor brought into existence by any voluntary agency of Lee county. It was born with the obligation upon it; which, in contemplation of law, existed when the new constitution was adopted, although the amount was not fixed until afterwards. The

fair and just interpretation of the statute, in providing that after proceedings are had to ascertain it, "the same shall *thenceforward* become and be the debt of Lee county," is, that, until such proceedings are had she shall not be under obligation to notice it, but when thus fixed and certified it shall have relation to the passage of the act. This intention, clear enough in reason, becomes indubitable from the directions to the old counties in the beginning of the section. They, in estimating, the exact amount of their indebtedness, and the proportion to be assumed by Lee, must take the same as it existed "at the passage of the act."

Whilst, therefore, we find no error in this, yet for want of demand, and other deficiencies in the petition, we think the circuit court erred in overruling the demurrer of defendant and ordering the peremptory writ.

Reverse the judgment and remand the case, with leave to the relator to amend if so advised, and for further proceedings consistent with law and this opinion.